**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| **MICHAEL IANNONE,** | : | **CIVIL ACTION NO.** |
| **Plaintiff,** | : | **3:25-cv-02091-KAD** |
| | : | |
| **v.** | : | |
| | : | |
| **BRIDGESTONE RETAIL OPERATIONS, LLC,** | : | |
| **Defendant.** | : | **OCTOBER 30, 2026** |

**PLAINTIFF'S REPLY TO DEFENDANT'S**
**<u>OBJECTION TO RESPONSE TO ORDER TO SHOW CAUSE</u>**

Pursuant to D. Conn. L. Civ. R. 7(d), the plaintiff, Michael Iannone ("Plaintiff"), hereby respectfully submits his Reply to the Objection to Response to Order to Show Cause ("Objection") filed by the defendant, Bridgestone Retail Operations, LLC ("Defendant Bridgestone"), dated October 16, 2026 (ECF No. 23).[1] It bears reiterating at the outset that the Plaintiff does not dispute that this case has stalled following its removal to federal court. That delay, however, does not justify extinguishing his claims for failures attributable wholly to prior counsel, particularly where he neither caused nor knowingly permitted those failures and has retained the undersigned to move the case forward. <u>See</u> <u>Dodson v. Runyon</u>, 86 F.3d 37, 40 (2d Cir. 1996) ("the more the delay was occasioned by the lawyer's disregard of his obligation toward his client, the more this factor argues in favor of a less drastic sanction imposed directly

---

[1] Attached hereto as Exhibit A is the Affidavit of Michael Iannone in Support of Reply to Defendant's Objection to Response to Order to Show Cause ("Iannone Aff."). As discussed further <u>infra</u>, Defendant Bridgestone's Objection raises new factual assertions concerning the Plaintiff's son and his workers' compensation claim that were neither raised in the Order to Show Cause nor addressed in the Plaintiff's initial papers. The Iannone Aff. responds directly to those assertions and is therefore properly before the Court. <u>See</u> <u>Bayway Ref. Co. v. Oxygenated Mktg. & Trading</u>, 215 F.3d 219, 226 (2d Cir. 2000) ("reply papers may properly address new material issues raised in the 3-4 opposition papers so as to avoid giving unfair advantage to the answering party.").

on the lawyer."). Indeed, Defendant Bridgestone's Objection repeatedly identifies failures within prior counsel's office: unanswered telephone calls and emails, nonparticipation in the Rule 26(f) process, outstanding disclosures and discovery responses, and failure to attend the Court's status conference. See generally ECF No. 23, at 1-4, 11-12. Every one of those obligations belonged to counsel, not to the Plaintiff. See Fed. R. Civ. P. 26(f)(2) ("attorneys of record . . . are jointly responsible for arranging the conference" and submitting the discovery plan); see also Dodson, supra, 86 F.3d at 41 ("[i]t was the attorney's responsibility to press his client's case.").

In an attempt to shift blame to the Plaintiff, Defendant Bridgestone advances the claim that the Plaintiff was "aware of and contributed to the failure to prosecute this case" because his son is a paralegal at his counsel's office. See ECF No. 23, at 8-9. But the son's purported receipt of emails from Bridgestone's counsel, standing alone, establishes neither the Plaintiff's knowledge of their contents nor his participation in the ensuing noncompliance. Defendant Bridgestone's conclusion depends on two successive, unsubstantiated inferences: first, that the son conveyed the relevant information to the Plaintiff; and second, that the Plaintiff knowingly authorized, acquiesced in, and/or contributed to the failures described. Other than argument, Defendant Bridgestone provides no evidence in support of these assertions. The Court should reject this attempt to substitute presumed knowledge and complicity for evidence, particularly where dismissal with prejudice "must be supported by clear evidence of misconduct" and specific factual findings. Mitchell v. Lyons Pro. Servs., Inc., 708 F.3d 463, 467 (2d Cir. 2013).

Accordingly, for the reasons set forth herein and in the Plaintiff's Response to Order to Show Cause (ECF No. 20), the ultimate sanction of dismissal is not warranted, and this action should be permitted to proceed on the merits.

## I. ARGUMENT

**a. Defendant Bridgestone's Own Account Attributes the Delay to Prior Counsel, and Any Sanction Should Be Tailored Accordingly.**

Defendant Bridgestone argues principally that the Plaintiff "cannot escape liability" for his prior counsel's defaults because he selected her as his attorney. See ECF No. 23, at 7-8 (citing Link v. Wabash R.R. Co., 370 U.S. 626, 633-34 (1962), and Chira v. Lockheed Aircraft Corp., 634 F.2d 664, 666 (2d Cir. 1980)). That argument not only overstates the law but conflates the attribution of counsel's conduct with the determination of an appropriate sanction. The Second Circuit has expressly rejected the proposition that the former dispenses with the latter.

Although, in Dodson, the Second Circuit acknowledged the premise that "a client is ordinarily bound by the acts of his lawyer[,]" it nevertheless explained that "[t]his principle, however, does not relieve the district court of the obligation to consider the relevant factors before dismissing an action—especially the suitability of lesser sanctions." See Dodson, supra, 86 F.3d at 40. The court expressly distinguished delay undertaken to advance a client's strategic interests from delay resulting from counsel's disregard of obligations to the client, explaining that the latter favors a less drastic sanction imposed directly on counsel. See id. at 40-41. It further recognized that, at least absent prejudice, dismissal is inappropriate where responsibility lies with counsel and the court has failed to consider alternatives. See id. at 40. Thus, although Dodson acknowledges attorney client attribution, it reaffirms that the court is required to consider attorney-directed sanctions notwithstanding that attribution.[2]

District courts within this Circuit have applied that distinction to deny dismissal on materially similar facts. See Griffin v. Singh, 2023 WL 8258712, at *6 (W.D.N.Y. Nov. 29,

[2] Bridgestone's reliance on *Dodson II* and *Europacific* presupposes the client complicity those decisions found. See ECF No. 23, at 8-9, 16. As discussed *infra* and established by the Iannone Affidavit, the Plaintiff neither knew of nor contributed to the defaults here. Those decisions therefore supply no basis for rejecting lesser sanctions on grounds of personal complicity and should be rejected.

2023) (denying Rule 41(b) dismissal in removed motor-vehicle action where counsel ignored discovery, conferences, and show-cause orders, because counsel was "to blame for failing to properly prosecute this case, to the exclusion of his client" and "[t]here [was] no indication that [the plaintiff] knew of or was complicit in counsel's significant failures"); LeRoy United Methodist Church v. Bhd. Mut. Ins. Co., 2024 WL 22703, at *4 (W.D.N.Y. Jan. 2, 2024) (same, despite eleven months of inaction, no initial disclosures or discovery responses, and a missed court-ordered conference, where the failures were "solely due to counsel's failings"); see also, McCargo v. Hedrick, 545 F.2d 393, 396 (4th Cir. 1976); Pichardo v. C.R. Bard, Inc., 563 Fed. Appx. 58, 62 (2014).

Thereafter, in Mitchell, the Second Circuit reaffirmed this principle in vacating a sanction that fell "entirely on the clients rather than principally on the lawyer." Mitchell, supra, 708 F.3d 463, 465. There, counsel had repeatedly disregarded court orders over eighteen months, received explicit warnings, and failed to correct his conduct despite a prior monetary sanction. See id. at 466-69. Nevertheless, although the first four Lucas factors favored dismissal, the court vacated the sanction because the district court had not adequately assessed the fifth factor—*i.e.*, the efficacy of lesser sanctions—including monetary sanctions. See id. at 468-69. The court emphasized that it could not determine whether the delays were attributable solely to counsel because the district court had made no findings resolving that question. See id. at 469; see also Romano v. Laskowski, 2024 WL 4635227, at *5 (2d Cir. 2024) (vacating Rule 41(b) dismissal because district court failed to "adequately consider whether sanctions less drastic than dismissal would be effective." [Citation and internal quotation marks omitted.]).

Importantly, the Mitchell court emphasized that, although a district court need not exhaust every lesser sanction, it must meaningfully consider the available alternatives and

articulate the grounds for rejecting them. See Mitchell, supra, 708 F.3d at 468-69. Mitchell therefore rejects the premise that the seriousness, persistence, and/or duration of counsel's defaults necessarily and automatically establishes the futility of lesser sanctions.[3] Even Chira, on which Defendant Bridgestone relies, see ECF No. 23, at 7, 10, cautions that dismissal should be employed "only when he is sure of the impotence of lesser sanctions." Chira, supra, 634 F.2d at 665; see Rodriguez v. Clark, 2017 WL 2369367, at *4 (D. Conn. May 31, 2017) ("dismissal is a drastic sanction, it should not be utilized without a careful weighing of its appropriateness.")

Here, Defendant Bridgestone's own account places prior counsel's conduct at the center of the delay: unanswered communications, nonparticipation in the Rule 26(f) process, outstanding discovery obligations, and failure to attend the status conference. See ECF No. 23, at 1-4, 11-12. Those failures implicate precisely the distinction identified in Dodson—between attributing counsel's defaults to the client and determining whether the resulting sanction should be imposed on counsel. Defendant Bridgestone's reliance on the Plaintiff's selection of his attorney addresses only the former and fails to supply an independent justification for rejecting the attorney-directed sanctions that Dodson expressly instructs courts to consider. See Dodson, supra, 86 F.3d at 40-41. Indeed, in Griffin, the court found that counsel had in fact received every filing through CM/ECF and "inexcusably neglected them, or worse, willfully failed to abide by them," yet still concluded that "the balance of equities requires a lesser sanction than dismissal, given that [the plaintiff] is not at fault for any portion of counsel's dereliction of duty." Griffin, supra, 2023 WL 8258712, at *6. Defendant Bridgestone's contention that prior counsel

[3] Other Second Circuit decisions reinforce that distinction. See World Wide Polymers, Inc. v. Shinkong Synthetic Fibers Corp., 694 F.3d 155, 160 (2d Cir. 2012) (explaining that, where counsel's misconduct did not seek an unfair litigation advantage, "any sanction should ordinarily be directed against the attorney rather than the party, absent strong justification"); United States ex rel. Drake v. Norden Sys., Inc., 375 F.3d 248, 258 (2d Cir. 2004) (holding, notwithstanding a seventeen-month delay, that "[t]he circumstances of this case simply do not rise to the level needed to justify outright dismissal").

received and ignored its communications, ECF No. 23, at 4, 11, thus confirms prior counsel's fault; it does not establish the Plaintiff's.

Further, Defendant Bridgestone's assertion that lesser sanctions would be ineffective merely because the case remained inactive for ten months suffers from the same analytical defect. See ECF No. 23, at 16-17. The duration of noncompliance establishes the extent of the failure requiring correction; it does not, without more, establish that a particular corrective measure would be futile. Indeed, Defendant Bridgestone's own request for lesser sanctions undermines its categorical assertion of futility. Specifically, it proposes compelled discovery responses, a prompt deposition, and an award of attorney's fees, see id. at 17-18, all of which will timely secure compliance and meaningfully advance this case. Although the Plaintiff does not construe Defendant Bridgestone's request for lesser sanctions as a concession of their sufficiency, Bridgestone cannot establish their inadequacy merely by reciting the past inaction those measures are designed to remedy.

Finally, the inquiry must also account for the undersigned's intervention and the renewed prosecution already demonstrated by the timely response to the Order to Show Cause. Indeed, the plaintiff has already undertaken efforts to ameliorate the delay in the litigation and has provided initial disclosures on October 16, 2024, supplements thereto on October 22, 2026, and responses, without objection, to Defendant Bridgestone's discovery requests on October 30, 2026.[4] Under Dodson and Mitchell, the Court must meaningfully consider a potential sanction in light of the circumstances presently before it. Accordingly, Plaintiff respectfully requests that the Court decline to dismiss this action, impose deadlines for the outstanding obligations, and, if a

[4] The plaintiff's recent compliance is germane to the sanction analysis. See Baptiste, supra, 768 F.3d at 217-19 (the "dramatic shift from incommunicado to responsive" after retention of counsel "assuages any concern about future delays," and the court can "move this case forward efficiently without the cudgel of extreme sanctions"); see, also GCIU Emp. Ret. Fund v. Chi. Tribune Co., 8 F.3d 1195, 1201 (7th Cir. 1993) (noting that "an earlier lack of diligence is not grounds for dismissal when the plaintiff is currently displaying diligence").

monetary sanction is warranted, direct it to counsel responsible for the identified delays. See Pecarsky v. Galaxiworld.com Ltd., 249 F.3d 167, 174 (2d Cir. 2001) ("[a] clear preference exists for cases to be adjudicated on the merits.")

**b. The Plaintiff's Affidavit Refutes Bridgestone's Arguments And Supports the Efficacy of Lesser Sanctions.**

Beyond recounting prior counsel's failure to prosecute this action, see ECF No. 23, at 1-4, 11-12, Defendant Bridgestone seeks to establish the Plaintiff's personal complicity through his son's employment and his participation in related workers' compensation proceedings. See id. at 8-9, 12-13. As explained above, that argument depends on assumptions about what the Plaintiff was told and how he responded. The accompanying affidavit addresses—and refutes—both premises: the Plaintiff first learned of the defaults and threatened dismissal during a workers' compensation call with Attorneys Schwab and Nelligan on or about October 5 or 6, 2026, and immediately requested assistance addressing them. See Iannone Aff. ¶¶ 8-11, 16. That sworn account not only supplies evidence on the very questions Defendant Bridgestone asks the Court to resolve through mere inference, but it bears directly on whether sanctions should be imposed on counsel responsible for the delay rather than extinguish the Plaintiff's claims.

As a threshold matter, the Court may properly consider that evidence on reply.[5] In Bayway, the Second Circuit upheld consideration of reply affidavits, explaining that "reply papers may properly address new material issues raised in the opposition papers." Bayway, supra, 215 F.3d at 226. Applying that principle, in Travelers Indem. Co. v. Excalibur Reinsurance Corp., 2013 WL 4012795 (D. Conn. Aug. 5, 2013) the court declined to strike a

[5] Consideration of the Plaintiff's affidavit is particularly appropriate because dismissal with prejudice requires "clear evidence" of misconduct and "a high degree of specificity in the factual findings[,]" particularly given its "harsh consequences for clients, who may be blameless[.]" Mitchell, supra, 708 F.3d at 467. Although prior counsel's defaults remain relevant, they do not, by themselves, establish the Plaintiff's knowing participation. The Court must assess Defendant Bridgestone's attribution of personal complicity against the Plaintiff's specific sworn account, rather than assume it from his son's employment.

reply affidavit addressing factual criticisms raised in opposition, even though it also furnished additional support for the movant's original position. See Travelers, supra, 2013 WL 4012795, at *2-3; see also Walsh v. City of Norwalk, 2011 WL 4572063, *3 n.4 (D. Conn. Sept. 30, 2011). Here, the Plaintiff's affidavit responds explicitly to Defendant Bridgestone's assertions concerning the Plaintiff's son, knowledge, and workers' compensation representation. If the Court determines that a further response is warranted, it may permit a limited supplemental submission. See Bayway, supra 215 F.3d at 227; Travelers, supra, 2013 WL 4012795, at *2-3.

On the merits, Defendant Bridgestone's reliance on a series of correspondence that purportedly went unanswered establishes what was sent to prior counsel's office; it does not establish what was actually communicated to the Plaintiff. See Maples v. Thomas, 565 U.S. 266, 283 (2012). His affidavit addresses that missing connection directly. The Plaintiff did not otherwise know that the action had stalled or required immediate intervention, and neither prior counsel nor his son had informed him that any request for information, deposition appearance, or other required action remained outstanding. Id. ¶¶ 10-11. Indeed, the Plaintiff had affirmatively inquired about the status of this action on one or two occasions and was told that Attorney Cahill was working on it. Id. ¶ 12. Those inquiries and assurances support his stated belief that counsel was handling the matter and undermine Defendant Bridgestone's inference that his son's involvement necessarily conveyed knowledge of the defaults. In any event, he also expressly denies directing anyone to disregard correspondence, withhold discovery, miss deadlines, or fail to attend conferences, or authorizing any strategy of delay. Id. ¶ 13; see Dodson, supra, 86 F.3d at 40 (dismissal becomes more suitable "the more the delay was occasioned by plaintiff's personal obstruction, or was designed to benefit the plaintiff's strategic interests"). Those assertions address both links in Defendant Bridgestone's proposed inference: communication of

the information and knowing participation in the resulting noncompliance.[6]

In their objection, the defendant argues that the delay in prosecuting this matter, in and of itself, requires the dismissal of this action and relies on several cases which have dismissed actions for failures to prosecute. ECF No. 23, at 10. However, a closer examination of these cases reveals that the majority of these cases address dilatory or obstructionist conduct that goes far beyond the instant Plaintiff's lack of knowledge concerning his counsel's inaction. These cases involve plaintiffs who disregarded repeated court orders and where both the docket and record before the Court firmly established that the plaintiff had both notice and affirmative involvement in the delay in prosecuting the action. The record in this case does not evidence affirmative obstruction or bad faith on the Plaintiff's part, which militates against the ultimate sanction of dismissal.

### C. Any Sanctions Imposed Should Not Prevent The Plaintiff From Further Pursuing This Action.

In considering what sanction to apply, the plaintiff respectfully suggests that any such sanction permit him to pursue his action. As aforesaid, the Second Circuit's general preference is that matters be heard on their merits. See, Pecarsky, supra, 249 F.3d at 172 ("[S]trong public policy favors resolving disputes on the merits."); Chira, supra, 634 F.2d at 668 ("[A] court must not let its zeal for a tidy calendar overcome its duty to do justice."). As such, the Plaintiff would suggest that any sanction be leveled not against him or his case, but rather against his prior counsel should the Court determine that the delays were unjustified and monetary sanction warranted. See, Dodson, supra, 86 F.3d at 40 (District Courts have "…suggested imposing

[6] Defendant Bridgestone's workers' compensation argument suffers from the same evidentiary defect, and its own account supports the prospect of compliance. Defendant Bridgestone emphasizes that the Plaintiff produced medical records, attended independent medical examinations, exchanged expert reports, and sat for a deposition. See ECF No. 23, at 12. His affidavit confirms that he cooperated with requests Attorney Schwab communicated. See Iannone Aff. ¶ 13. However, those same acts demonstrate his willingness to fulfill obligations communicated to him; they do not establish knowledge of outstanding obligations in this action.

sanctions directly on dilatory lawyers in appropriate cases..”). There is no evidence that the Plaintiff’s actions have prejudiced the defendant’s ability to defend this action and, should the matter proceed, Defendant Bridgestone will have the ability to fully explore the Plaintiff’s claims. Should the Court determine that the delay occasioned by counsel warrants a sanction, it should not be assessed against the Plaintiff personally, as there has been no showing that he contributed to the delays, caused the delays out of a desire to gain a litigation advantage, or engaged in obstruction or bad faith.

Further, although the Plaintiff is prepared to proceed expeditiously, if the Court allows the action to proceed, the Plaintiff should be afforded an opportunity to conduct discovery. Declining to dismiss the case but precluding the Plaintiff from conducting discovery will have the substantive effect of a dismissal—a result that District Courts have indicated may be overly harsh where the delays are attributable to counsel. See, Pichardo, supra 563 Fed. Appx. at 62 (2014). Sanctions that deprive a litigant of their ability to prosecute their case are “akin to dismissing the action altogether.” Worldwide Polymers Inc., supra, 694 F.3d at 159. That is particularly true here, as this case will likely require expert testimony and depositions of Defendant Bridgestone and their agents. Accordingly, the Plaintiff respectfully requests that the Court permit an amended scheduling order that takes these principles into account.

## III. CONCLUSION

In light of the foregoing, the Plaintiff respectfully requests that the Court decline to dismiss the action and permit him to further litigate this matter on the merits to conclusion.

Respectfully Submitted,

THE PLAINTIFF,
MICHAEL IANNONE

*/s/ Brendan K. Nelligan*

Brendan K. Nelligan, Esq.
Federal Bar No. ct30224
Kennedy, Johnson, Schwab & Roberge, P.C.
545 Long Wharf Drive, Suite 304
New Haven, CT 06511
Tel: (203) 865-8430
bnelligan@kennedyjohnson.com

**CERTIFICATE OF SERVICE**

I hereby certify that on October 30, 2026, a copy of the foregoing was filed electronically and served by electronic or first-class mail, postage prepaid, upon all counsel of record:

Kevin J. O'Leary, Esq. (ct30271)
Benjamin H. Levites, Esq. (ct30481)
Coughlin Betke LLP
175 Federal Street
Boston, MA 02110
koleary@coughlinbetke.com
blevites@coughlinbetke.com
Counsel for Defendant

/s/ Brendan K. Nelligan
Brendan K. Nelligan, Esq.